# In the United States Court of Federal Claims

No. 11-0084C

(Filed under Seal: June 19, 2014)
(Reissued:  June 24, 2014)
**(NOT TO BE PUBLISHED)**

_____
                                                          )
**LIBERTY AMMUNITION, INC.,**            )
                                                          )
             **Plaintiff,**                      )
                                                          )
    **v.**                                              )
                                                          )
**UNITED STATES,**                             )
                                                          )
             **Defendant.**                   )
_____)

**ORDER** [1]

LETTOW, Judge.

      Pending before the court are four motions *in limine* filed in anticipation of the scheduled trial of this patent case involving the military's so-called "green bullet."  Two motions were filed by the government and the other two were filed by plaintiff Liberty Ammunition, Inc. ("Liberty").[2]  The government's motions seek to exclude from evidence Non-Disclosure Agreements ("NDAs") signed on behalf of the government by Mr. Thomas Campion and Mr. Charles Marsh, and any related testimony regarding those NDAs.  Liberty's first motion seeks to exclude any testimony on the independent development by the government of the allegedly infringing M855A1 EPR and M80A1 EPR rounds.  Its second motion seeks to exclude any evidence regarding *ex parte* testing of the prior-art M855 and M855 LFS rounds conducted on February 7 and 12, 2014, on behalf of the government.  For the reasons stated, each of the motions is denied.

---

      [1]Because this order might have contained confidential or proprietary information within the meaning of Rule 26(c)(1)(G) of the Rules of the Court of Federal Claims ("RCFC") and the protective order entered in this case, ECF No. 27, it was initially filed under seal.  The parties were requested to review the decision and provide proposed redactions of any confidential or proprietary information.  No redactions were requested.

    [2]All four motions were timely filed on May 9, 2014.

1

*A.  The Campion NDA and Related Testimony*

The NDA signed on behalf of the government by Mr. Campion ("Campion NDA") is dated June 23, 2005, *see Liberty Ammunition, Inc. v. United States*, 101 Fed. Cl. 581, 584 (2011), at a time when Mr. Campion, a government contractor, was serving as the project manager for the Program Executive Office for Special Projects at the United States Special Operations Command ("SOCOM"), Def.'s Mot. in Limine to Exclude the Non-Disclosure Agreement Signed by Thomas Campion and Testimony Relating to the Same ("Def.'s Mot. to Exclude Campion NDA") at 2, ECF No. 52.  During that period, he was having discussions with Mr. PJ Marx, the inventor, regarding Mr. Marx's bullet design.  *Id*.; *see also* Pl.'s Resp. to Def.'s Mot. to Exclude Campion NDA at 2-3, ECF No. 62.[3]  The government argues that exclusion of the Campion NDA is justified because the government cannot be bound by Mr. Campion, who, as a government contractor, did not have authority to execute a contract on behalf of the government.  *See* Def.'s Mot. to Exclude Campion NDA at 5.

Liberty agrees with the concept that government contractors generally are not authorized to execute contracts on behalf of the government, but it argues that exceptions apply in this case.  Pl.'s Resp. to Def.'s Mot. to Exclude Campion NDA at 6-11.  Liberty contends that Mr. Campion, by nature of his position, possessed express actual authority to contractually bind the government.  *Id.* at 6.[4]  In support of this argument, Liberty stresses that the government has produced no documentation indicating that Mr. Campion lacked authorization to execute the NDA.  *Id.* at 6-7.  This contention misplaces the burden to establish such authority.  The burden to show authority to contract rests on the party seeking to assert that authority exists, in this case, Liberty.  *See Council for Tribal Emp't Rights v. United States*, 112 Fed. Cl. 231, 243-44 (2013),

---

[3]An earlier NDA was signed on February 17, 2005 by three individuals, Mr. Marx, then-Major (now Lt. Colonel) Glenn A. Dean of the United States Army, and John W. Amick.  *See Liberty Ammunition*, 101 Fed. Cl. at 584.  At the time, Major Dean was Chief of Small Arms Division, Directorate of Combat Development, Army Infantry Center, Fort Benning, Georgia.  Mr. Amick was his senior contractor-administrator.  The government has not filed an *in limine* motion regarding that NDA.

[4]Liberty argues, alternatively, that (1) Mr. Campion had implied authority to execute the agreement, because non-disclosure agreements were "integral" to Mr. Campion's duty to protect proprietary information disclosed by potential contractors, Pl.'s Resp. to Def.'s Mot. to Exclude Campion NDA at 7-8 (citing *Brunner v. United States*, 70 Fed. Cl. 623, 641-43 (Fed. Cl. 2006) ("[A]n agent may have an implied authority to contract on behalf of the government, based on a consideration of the duties of that agent, and whether the power to contract was appropriate or essential to their performance.")), and (2) SOCOM ratified the Campion NDA by inviting, accepting, and reviewing Liberty's Small Business Innovation Research ("SBIR") proposal, further validating the agreement as a binding contract with the government, *id*. at 10-11 (citing *Philadelphia Suburban Corp. v. United States*, 217 Ct. Cl. 705, 707 (1978), and *City of El Centro v. United States*, 17 Cl. Ct. 794, 798 (1989), *rev'd*, 922 F.2d 816 (Fed. Cir. 1990)); *see also Silverman v. United States*, 679 F.2d 865, 868-70 (Ct. Cl. 1982) (addressing institutional ratification).

*aff'd*, __ Fed. Appx. __, 2014 WL 1910497 (Fed. Cir. May 14, 2014).  In this instance, the extent of Mr. Campion's authority, express or implied, and possible governmental ratification of the NDA require the court to resolve factual issues.  Consequently, it would be inappropriate for the court to exclude evidence about the Campion NDA prior to trial.

      The government also contends that even if it is bound by the Campion NDA, the Anti-Assignment Act, 41 U.S.C. § 6305 (formerly codified as 41 U.S.C. § 15), bars Liberty's breach of contract claim.  *See* Def.'s Mot. to Exclude Campion NDA at 5-8.[5]  In opposition, Liberty argues that the waiver and operation-of-law exceptions to the Anti-Assignment Act apply.  *See* Pl.'s Resp. to Def.'s Mot. to Exclude Campion NDA at 12-17.  First, Liberty contends that the waiver exception applies because the NDA contained a waiver provision, *see* Def.'s Mot. to Dismiss Ex. C (Campion NDA), ¶ 3.5, ECF No. 9-3, and that provision was satisfied when the government was provided with written notice of assignment at the outset of this case.  Pl.'s Resp. to Def.'s Mot. to Exclude Campion NDA at 13.  Second, Liberty argues that the operation-of-law exception applies because the shift in the contracting party, from Mr. Marx as a sole proprietorship to Liberty Ammunition as a corporation, did not change the nature of the contract itself, and no written notice was required for the exception to apply.  *Id*. at 11-13 (citing *L-3 Commc'ns Integrated Sys., L.P. v. United States*, 84 Fed. Cl. 768, 777 (Fed. Cl. 2008)).  The government asserts that neither exception is applicable in this case.  Def.'s Mot. to Exclude Campion NDA at 5-8.[6]

      The government previously presented this argument to the court in connection with a motion to dismiss.  As explained in a prior opinion resolving that motion, any decision regarding whether the Campion NDA is subject to the Anti-Assignment Act turns on disputed issues of fact

---

[5]The Anti-Assignment Act generally forbids a private party from transferring its interest in a contract with the federal government.  *See Liberty Ammunition*, 101 Fed. Cl. at 586 & n.3.  The government asserts that because Mr. Marx, not Liberty, was the signing party to the NDA, Liberty has no right to assert a claim under the contract.  Def.'s Mot. to Exclude Campion NDA at 7.

[6]The government also claims that under the Federal Acquisition Regulations ("FAR"), a novation agreement must be executed for the government to recognize a successor in interest.  *See* Def.'s Mot. to Exclude Campion NDA at 8 (citing 48 C.F.R. § 42.1204).  As Liberty points out, however, *see* Pl.'s Resp. to Def.'s Mot. to Exclude Campion NDA at 16-17, the FAR applies only to acquisitions as defined in Part 2 of the FAR:

> [T]he acquiring by contract with appropriated funds of supplies or services (including construction) by and for the use of the federal government through purchase or lease, whether the supplies or services are already in existence or must be created, developed, demonstrated, and evaluated.

48 C.F.R. § 2.101 ("Definitions – 'Acquisition'").  The government fails to explain why FAR provisions should apply to the NDA.

3

that should be determined through testimony and evidence at trial. *Liberty Ammunition*, 101 Fed. Cl. at 587.[7]

### B. The Marsh NDA and Related Testimony

A NDA signed by Mr. Marsh on behalf of the government ("Marsh NDA") is also at issue.[8] *See* Def.'s Mot. in Limine to Exclude the Non-Disclosure Agreement Signed by Charles Marsh and Testimony Relating to the Same ("Def.'s Mot. to Exclude Marsh NDA") at 1, ECF No. 53. Mr. Marsh was and is an employee of the government and is involved with small-caliber ammunition for the Army. *Id.* at 2. He signed a NDA with Mr. Marx on January 11, 2006. *See Liberty*, 101 Fed. Cl. at 584. The government emphasizes that the NDA defines "Confidential Information" to mean proprietary information "disclosed by Disclosing Party to Receiving Party." Def.'s Mot. to Exclude Marsh NDA at 4. The government argues that because Mr. Marsh did not receive any of the confidential information implicated in the NDA directly from Mr. Marx, no breach of the NDA is definitionally possible. *Id.* Liberty responds that Mr. Marsh received proprietary information implicated in the NDA from Mr. Campion and additionally that Mr. Marsh violated the Marsh NDA by transmitting that information. Pl.'s Resp. to Def.'s Mot. to Exclude Marsh NDA at 5-8, ECF No. 63. In Liberty's view, the government's attempt to distinguish between a direct disclosure by Mr. Marx and an indirect disclosure that occurred to Mr. Marsh via Mr. Campion, with Mr. Marx's permission, is not meaningful. *Id.* at 8. The court agrees that the indirect means of disclosure provide no reason to exclude evidence regarding the Marsh NDA.

In addition, the government reiterates an argument based upon the Anti-Assignment Act that is identical to a contention it makes relating to the Campion NDA. Def.'s Mot. to Exclude Marsh NDA at 5. Here also, the court concludes that the questions respecting applicability of the Anti-Assignment Act and the exceptions to that Act can only be resolved through trial.

### C. Independent Development of M855A1 EPR and M80A1 EPR Rounds

Liberty requests exclusion of all testimony and evidence related to the Army's purported independent development of the allegedly infringing products, the M855A1 EPR and M80A1 EPR bullets (collectively "the A1 technology"). *See* Pl.'s Mot. in Limine to Preclude Any and All Trial Evidence Offered by Def. Regarding Supposed "Independent Development" of the M855A1 EPR & M80A1 EPR Rounds ("Pl.'s Mot. to Exclude Evid. of Indep. Dev."), ECF No. 55. As part of its case in chief, Liberty seeks to prove that the government developed the M855A1 EPR and M80A1 EPR rounds through misappropriated proprietary information, in violation of its NDAs. *Id.* at 3-4. Liberty puts forward two grounds for its motion to exclude

---

[7]The court has already determined that the government can waive the Anti-Assignment Act preemptively in a contractual provision. *Liberty Ammunition*, 101 Fed. Cl. at 588-89. There is a significant possibility that the government waived the Anti-Assignment Act here, which too can be addressed at trial.

[8]The Marsh and Campion NDAs are identical except for the names of the signing party. *Liberty*, 101 Fed. Cl. at 584.

evidence of independent development. First, Liberty cites the absence of any research notebooks, required by Army Reg. 27-60, which might serve as corroboration to oral testimony of such development. *Id*. at 7-11 & Ex. H (Army Reg. 27-60), ¶ 2-3. Second, Liberty argues that Fed. R. Evid. 1002, which sets out requirements for original documentation, precludes admission of oral testimony in place of such documentation. *Id*. at 12-13.[9] The government counters that it cannot provide or adduce into evidence any laboratory notebooks because they do not exist and insists that it has complied with discovery requests and produced over 100,000 pages of other documentation regarding development of the A1 EPR technology. Def.'s Opp'n. to Pl.'s Mot. to Exclude Evid. of Indep. Dev. at 13-14, ECF No. 61. Additionally, the government argues that the Federal Rules of Evidence provide no basis to exclude oral testimony of the independent development of the A1 EPR technology at the pre-trial stage. *Id.* at 15.

Liberty's reliance on Fed. R. Evid. 1002 is unavailing. The rule is intended to be applied when the contents of a writing are at issue and to ensure that the writing itself, or a suitable duplicate, is produced. *See R & R Assocs. v. Visual Scene, Inc.*, 726 F.2d 36, 38 (1st Cir. 1984) ("No evidentiary rule, however, prohibits a witness from testifying to a fact simply because the fact can be supported by written documentation."). While laboratory notebooks would be relevant evidence of independent development, the apparent non-existence of such notebooks does not mean that oral testimony on that topic cannot be presented. A witness can testify about any relevant and non-prejudicial subject of which he or she has personal knowledge, *see* Fed. R. Evid. 104, 403, and 602, assuming that the other Federal Rules of Evidence are satisfied.

Notably, however, the court may not look favorably on testimony of independent development that lacks corroboration by evidence that would normally be available in a patent case. *See Medichem, S.A., v. Rolabo, S.L.*, 437 F.3d 1157, 1169-73 (Fed. Cir. 2006) (finding that oral testimony was not sufficient to corroborate an inventor's claims of reduction to practice of an invention). That said, the weight to be accorded a witness's testimony or the contents of any corroborating documents must be resolved during trial.

### D.  *Ex Parte M855 and M855 LFS Tests*

Liberty also seeks to exclude the February 2014 *ex parte* tests of prior art in the form of M855 and M855 LFS projectiles conducted at the direction of one of the government's experts after discovery closed and without notice to Liberty. *See* Pl.'s Mot. in Limine to Exclude Feb. 2014 Ex Parte M855 and M855 LFS Tests by Def. ("Pl.'s Mot. to Exclude Tests") at 6, ECF No. 54 (citing *In re Newman*, 782 F.2d 971, 974 (Fed. Cir. 1986) (finding a lack of "fundamental fairness" in *ex parte* tests that deviated too greatly from safeguards found in Fed. R. Civ. P. 34)). These tests were performed as part of the government's litigation strategy to generate information to be used by its expert witness. *See* Def.'s Opp'n to Pl.'s Mot. to Exclude Tests at 4-6, ECF No. 60. The government apparently seeks to use the results of these tests, along with expert testimony, to support its argument that the patent at issue is invalid because it was anticipated by the M855 and M855 LFS ammunition, which were both in the prior art. *Id.*

---

[9]Rule 1002 states that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002.

Liberty argues that the tests should be excluded because of the lack of objectivity of the tester and the self-serving nature of the circumstances. Pl.'s Mot. to Exclude Tests at 7 ("*Ex parte* tests are viewed with suspicion 'because acts that are not observed or corroborated by an opposing party may be entirely self-serving.'" (quoting *Amgen, Inc. v. Chugai Pharm. Co.*, No. 87-2617-Y, 1989 WL 169006, at *64 (D. Mass. Dec. 11, 1989), *rev'd on other grounds*, 927 F.2d 1200 (Fed. Cir. 1991))). Liberty additionally argues that the *ex parte* tests were prejudicial because the government waited to release the results until after the relevant expert reports were exchanged. Pl.'s Mot. to Exclude Tests at 7. Alternatively, Liberty maintains that even if the tests were to be admitted, any expert testimony relying on them should receive little or negligible weight. *Id*. at 6 (citing *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 586 F. Supp. 1176, 1214 (D. Kan. 1984), *rev'd on other grounds*, 772 F.2d 1570 (Fed. Cir. 1985)).

The government responds by contending that the testing gives rise to an issue of fact that should be determined at trial. Def.'s Opp'n to Pl.'s Mot. to Exclude Tests at 7-8. It argues that the tests results are potentially admissible for two reasons. First, *ex parte* tests that follow proper procedural safeguards can be given evidentiary consideration. *Id*. at 8 (citing *Congoleum Indus., Inc. v. Armstrong Cork Co.*, 319 F. Supp. 714, 716 (E.D. Pa. 1970)).[10] Second, the government argues that its expert will testify at trial, thereby negating Liberty's reliance on *Rosemount, Inc. v. Beckman Instruments, Inc.*, 727 F.2d 1540, 1549 (Fed. Cir. 1984), in which the Federal Circuit excluded testimony regarding *ex parte* tests where the defendant did not produce an expert to clarify the test results at trial. Def.'s Opp'n to Pl.'s Mot. to Exclude Tests at 9-10. Because precedent does not support a blanket exclusion of all *ex parte* tests, Liberty's motion to exclude the results of the *ex parte* tests conducted under the direction of one of the government's experts is unpersuasive.

## CONCLUSION

For the reasons stated, both of the government's motions *in limine* and both of Liberty's motions *in limine* are DENIED.

It is so ORDERED.

s/ Charles F. Lettow<br>
Charles F. Lettow<br>
Judge

---

[10]In support of this argument, the government points out that Liberty's expert does not question the validity of the *ex parte* tests but only the repeatability of the tests. Def.'s Opp'n to Pl.'s Mot to Exclude Tests at 8 n.5 (citing *id*. Ex. 7, at 173).